[896 NYS2d 603]

Dennis M. Lemke, Plaintiff, v Zurich North America et al.,
Defendants.

Supreme Court, Nassau County, December 30, 2009

*Steinberg & Cavaliere, LLP*, White Plains, for American Guarantee & Liability Insurance Company and another, defendants. *Fred L. Pollack* and *William S. Schaefer*, Mineola, for Louis N. Agresta, defendant. *Sanford F. Young, P.C.*, New York City, for Ben Gersten, defendant. *Edward W. Hayes, P.C.*, New York City, and *William S. Schaefer*, Mineola, for Ernest J. Peace, defendant. *Lawrence V. Carra* and *William S. Schaefer*, Mineola, for plaintiff.

**OPINION OF THE COURT**

KAREN V. MURPHY, J.

Motion by defendant American Guarantee & Liability Insurance Company for summary judgment is granted. Cross motion by plaintiff for summary judgment is denied. Cross motion by defendant Ben Gersten for summary judgment is denied.

This is an action for a declaratory judgment that defendant American Guarantee & Liability Insurance Company is obligated to defend and indemnify plaintiff under a lawyers professional liability insurance policy. Plaintiff Dennis Lemke is an attorney whose practice is concentrated primarily in criminal defense. In July 1999, defendant Ben Gersten was indicted by a Nassau County grand jury and charged with various counts of sodomy in the first degree and related crimes arising from forcible sexual conduct with his daughter. The acts were alleged to have occurred between March 1995 and December 1998, when the victim was between 10 and 13 years old. Lemke was retained to represent Gersten on these charges, as well as a New York County indictment charging him with similar activity.

Against plaintiff's advice, Gersten, a nonpracticing attorney, waived his right to a jury on the Nassau County indictment and proceeded to trial before Judge Belfi. At trial, the complainant gave detailed testimony of sexual abuse by her father. The prosecutor also called a physician who testified concerning her examination of the victim's genital area. The doctor used a device known as a colposcope to magnify the genital area and prepare certain photographs or "slides." The doctor also testified as to her findings which, the doctor claimed, supported her opinion that the complainant had suffered "penetrating trauma" to the anus and the vagina. Additionally, the prosecutor called a clinical psychologist who testified about "child sexual abuse accommodation syndrome." According to the psychologist, children who are sexually abused frequently do not disclose the abuse until adolescence. The purpose of this testimony was to explain why the complainant failed to report the abuse for a number of years.

Plaintiff's theory of defense was that the complainant had engaged in sexual activity short of intercourse with a boyfriend of her own age, rather than anal and vaginal intercourse with her father. Through cross-examination of the People's experts, plaintiff attempted to establish that the medical evidence was consistent with the former type of sexual activity. Plaintiff did not call or consult with a medical expert to render an opinion as to whether the objective findings were indicative of forcible penetration. Although plaintiff obtained the victim's medical records and consulted with a former registered nurse, he did not obtain pretrial discovery of the colposcopic slides. Nor did plaintiff consult with or call an expert in the field of child sexual abuse accommodation syndrome, although at least one expert asserts that it is no longer regularly accepted in the research community. Judge Belfi convicted Gersten of all charges. On January 5, 2000, Judge Belfi sentenced Gersten on three of the sodomy charges to consecutive indeterminate terms of 12½ to 25 years, with the sentences on other charges to run concurrently.

Gersten, now represented by other counsel, appealed to the Appellate Division on the ground of ineffective assistance of counsel. On February 5, 2001, the Appellate Division reduced the sentences on the sodomy charges to the maximum legal sentence, 8⅓ to 25 years, and otherwise affirmed the judgment of conviction (*People v Gersten*, 280 AD2d 487 [2d Dept 2001]). The Appellate Division ruled that, insofar as Gersten's ineffec-

tive assistance claim could be reviewed on the appellate record, under the totality of the circumstances defendant received meaningful representation. On July 2, 2001, the Court of Appeals denied leave to appeal from the order of the Appellate Division affirming the judgment of conviction (*People v Gersten*, 96 NY2d 901 [2001]).

On November 7, 2000, while the appeal to the Appellate Division was pending, Gersten moved before Judge Belfi to vacate judgment pursuant to CPL 440.10 on the ground of ineffective assistance of counsel. In support of the motion, Gersten's counsel presented facts outside the trial record, including the availability of favorable expert testimony that might have discredited the prosecution's case. Finding that counsel's failure to call the experts was a reasonable tactical decision, Judge Belfi denied the motion to vacate judgment on March 7, 2001. It appears from Judge Belfi's decision that no hearing was conducted on the motion and plaintiff was not required to testify.

On July 11, 2002, Gersten filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York, alleging deprivation of his right to the effective assistance of counsel. Because Gersten's ineffective assistance claims had been adjudicated on the merits in state court, federal habeas corpus relief was available only if the District Court concluded that the state ruling (1) involved an unreasonable application of clearly established federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding (*see* 28 USC § 2254 [d]). At the request of the Nassau County District Attorney, plaintiff submitted an affidavit in opposition to the federal habeas corpus petition. In the affidavit, which is dated November 25, 2002, plaintiff acknowledged that he was familiar with the allegations in the federal petition and briefly described his strategy during the state trial. Plaintiff further elaborated on his strategy during his telephone testimony, which was given at the District Court's evidentiary hearing on January 12, 2004.

On January 15, 2004, Judge Weinstein granted Gersten's petition for a writ of habeas corpus on the grounds of ineffective assistance of counsel (*Gersten v Senkowski*, 299 F Supp 2d 84 [ED NY 2004]). Judge Weinstein found that plaintiff's performance was "constitutionally deficient" (299 F Supp 2d at 101) based upon his failure to call or consult with a medical expert concerning the forensic evidence of penetration or a psychologist concerning child sexual abuse accommodation syndrome.

Judge Weinstein found that Gersten was prejudiced by counsel's errors because "[t]here is a reasonable probability that petitioner would not have been convicted had defense counsel conducted an adequate investigation into the medical evidence and called an expert to testify" (*id.* at 104). The court further found that "[t]he failure of the trial court to consider the importance of the omitted expert testimony in denying petitioner's motion to vacate the judgment of conviction is an unreasonable application of the *Strickland* standard" (*id.*; *see Strickland v Washington*, 466 US 668 [1984]). The federal court ordered Gersten to be released unless state criminal proceedings were commenced against him within 60 days. Judge Weinstein's order was affirmed by the United States Court of Appeals for the Second Circuit on October 17, 2005 (*Gersten v Senkowski*, 426 F3d 588 [2d Cir 2005]).

The Nassau County District Attorney elected not to pursue the charges, and Gersten was released from prison in November 2005. By order dated September 12, 2006, the County Court of Nassau County dismissed the indictment against Gersten.

On August 3, 2007, Gersten commenced a legal malpractice action against plaintiff in New York County. In the malpractice action, Gersten named as additional defendants Ernest J. Peace, Louis N. Agresta, Victor Carr, and Andrew Blum. Gersten's theory was that these other attorneys were actually partners of plaintiff and vicariously liable for his malpractice during the criminal trial.

On January 6, 2003, plaintiff obtained a professional liability insurance policy from defendant American Guarantee & Liability Insurance Company. The policy covered the period December 16, 2002 to December 16, 2003 and was renewed annually through the period December 16, 2006 to December 16, 2007. The policy provides coverage for acts or omissions that occur during the policy period, and those that occurred prior to the policy period, provided that

> "prior to the inception of the first policy issued by the company . . . no insured had any basis 1) to believe that any insured had breached a professional duty, or 2) to foresee that any such act or omission or related act or omission might reasonably be expected to be the basis of a claim against any insured."

The policy contained a "Notice of Potential Claim" provision which states that

"[t]he insured, as a condition precedent to this policy, shall immediately provide notice to the company if any insured has any basis to believe that any insured has breached a professional duty or to foresee that any such act or omission might reasonably be expected to be the basis of a claim."

The aggregate amount of the policy is $750,000 with a limit of liability of $250,000 on each claim. The policy contains a $5,000 deductible.

On August 15, 2007, plaintiff forwarded a copy of the summons and complaint in the malpractice action to American Guarantee. On August 24, 2007, the insurer denied coverage on various grounds, including that the insured had violated the notice of potential claim provision in the policy.

In January 2008, plaintiff commenced the present action, seeking a declaratory judgment that American Guarantee is obligated to defend and indemnify plaintiff in the underlying malpractice action. Plaintiff named as additional defendants Gersten, Peace, Agresta, Carr, and Blum, asserting that they may be affected by the court's judgment. In his answer, served about May 27, 2008, defendant Gersten asserts a cross claim against codefendant American Guarantee, requesting a declaratory judgment that the insurer is obligated to indemnify Lemke in the underlying malpractice action.

By order dated February 14, 2008, Justice Diamond denied Gersten's motion in the New York County action for partial summary judgment on the issue of Lemke's malpractice liability (*Gersten v Lemke*, 2008 NY Slip Op 30470[U] [Sup Ct, NY County 2008]). The court reasoned that Lemke had no opportunity in federal court to litigate the quality of his legal services and the issues of ineffective assistance and attorney malpractice were not "identical." Thus, the court declined to grant collateral estoppel effect to the judgment in the federal habeas corpus proceeding.

Defendant American Guarantee moves for summary judgment declaring that it has no obligation to defend or indemnify plaintiff in the underlying malpractice action. American Guarantee requests a further declaration that it has no duty to pay any of the benefits of the policy to defendant Ben Gersten in the event he recovers against plaintiff. American Guarantee argues that it has no obligation under the policy because plaintiff failed to comply with the notice of potential claim provision. The insurer asserts that plaintiff did not provide timely

notice because at the time of his affidavit in November 2002, plaintiff had reason to foresee that his representation of Gersten might be the basis of a malpractice claim.

Plaintiff cross-moves for summary judgment that the insurer is obligated to defend and indemnify him. Plaintiff argues that Gersten did not have a claim for legal malpractice until September 12, 2006, when County Court dismissed the criminal charges against him. Plaintiff further argues that he had no basis to believe that he had breached a professional duty until the malpractice complaint was served on him in August 2007.

Defendant Gersten cross-moves for summary judgment declaring that the insurer is obligated to indemnify Lemke. Gersten argues that plaintiff's notice to American Guarantee was timely. Alternatively, Gersten argues that pursuant to Insurance Law § 3420, absent a showing of prejudice, a late notice defense may not be asserted against the injured party. The court understands Gersten's motion as requesting a declaration that his notice to American Guarantee was timely.

Insurance Law § 3420 (a) provides that

> "[n]o policy or contract insuring against liability for injury to person, . . . , or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions that are equally or more favorable to the insured . . .
>
> "(4) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter."

Such a provision, requiring that notice be given "as soon as was reasonably possible," is contained in plaintiff's professional liability policy.

If an insurer does not receive timely notice in accordance with the policy, or as soon as reasonably possible, the insurer may disclaim coverage, whether it is prejudiced by the delay or not (*Briggs Ave. LLC v Insurance Corp. of Hannover*, 11 NY3d 377, 381-382 [2008]). While this rule produces harsh results in some cases, it also, by encouraging prompt notice, enables insurers to investigate claims promptly and thus to deter or detect

ill-founded or fraudulent claims (*id*. at 382). A good faith belief of nonliability may excuse failure to give timely notice, provided the belief is reasonable (*Great Canal Realty Corp. v Seneca Ins. Co., Inc.*, 5 NY3d 742 [2005]). The insured bears the burden of establishing the reasonableness of the proffered excuse (*id*. at 744). Ordinarily, the question of whether the insured had a good faith belief in nonliability, and whether that belief was reasonable, presents an issue of fact and not one of law (*St. James Mech., Inc. v Royal & Sunalliance*, 44 AD3d 1030, 1031 [2d Dept 2007]). It is only when the facts are undisputed and not subject to conflicting inferences that the issue can be decided as a matter of law (*id*. at 1031-1032).

Where the underlying case is a garden variety personal injury action, the notice of claim provision allows the insurer to investigate the underlying incident promptly to determine whether its insured was negligent. Similarly, where the underlying claim is based upon dental or medical malpractice, a notice of claim provision allows the insurer to investigate the underlying treatment to determine whether its insured departed from good and accepted practice (*see Whitney M. Young, Jr. Health Ctr. v New York State Dept. of Ins., Liquidation Bur.*, 152 AD2d 835 [3d Dept 1989]). Where the underlying claim is based upon legal malpractice in a civil case, the notice of claim provision allows the insurer to investigate the civil matter to determine whether its insured exhibited the degree of skill commonly used by an ordinary member of the legal profession (*Reznick v Zurich N. Am. Specialties*, 45 AD3d 750 [2d Dept 2007]). In all these situations, the insurer may disclaim coverage if it does not receive notice of the claim "within a reasonable time in view of all of the circumstances" (*id*. at 751).

Plaintiff argues that the present case is "unique" because the malpractice claim arises from representation in a criminal case. Plaintiff suggests that because of the criminal client's heavy burden of proof in a legal malpractice action, the attorney need not notify his insurer of a potential claim until the attorney is served with a summons and a legal malpractice complaint.

In legal malpractice actions generally, plaintiff must establish that "but for" the attorney's negligence, the result of the prior case would have been more favorable (*Carmel v Lunney*, 70 NY2d 169 [1987]). In a criminal case, the client may argue that but for the attorney's failure to conduct a proper defense, as by asserting the 5th Amendment privilege or getting evidence suppressed, the indictment would have been dismissed. However, as

a matter of public policy, a criminal defendant may not maintain a malpractice action against the attorney unless he alleges "his innocence or a colorable claim of innocence of the underlying offense" (*Carmel* at 173). So long as the determination of guilt remains undisturbed, no cause of action will lie (*id.*). The criminal client bears the "unique burden" to plead and prove that his conviction was due to the attorney's actions alone and not due to some consequences of his guilt (*Britt v Legal Aid Socy.*, 95 NY2d 443, 447 [2000]).

To rebut the client's claim that his conviction is due to the attorney's actions alone, the attorney may offer evidence of the client's guilt in the legal malpractice action. Thus, an insurer has an interest in being notified of the malpractice claim promptly, in order to investigate the underlying criminal case and develop additional evidence of the client's guilt. To the extent that the insurer needs to investigate the factual context underlying the attorney's representation, a legal malpractice case based upon criminal defense is no different from any other malpractice action.

However, because of the opportunity for collateral review of a criminal conviction, subsequent opportunities to review the effectiveness of the attorney's assistance may arise. Ironically, in the criminal context, as time goes by, an insurer may acquire more information as to the quality of its insured's legal services. Thus, the possibility of collateral review tempers, to some extent, the insurer's need for prompt notice of a malpractice claim. However, an insurer is entitled to timely notice of a potential claim, regardless of whether it is prejudiced by the delay. Thus, the court holds that a lawyer providing criminal defense services must provide notice of claim to the malpractice insurer "within a reasonable time in view of all of the circumstances." The court will proceed to determine whether the notice provided by plaintiff was reasonable.

On a motion for summary judgment, it is the proponent's burden to make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (*JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 384 [2005]). Failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers (*id.*). However, if this showing is made, the burden shifts to the party opposing the summary judgment motion to produce evidentiary proof in admissible form sufficient to establish the existence of

material issues of fact which require a trial (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

■ At trial, the attorney bears the burden of establishing that he gave the insurer notice of the potential malpractice claim as soon as reasonably possible. However, on defendant insurer's motion for summary judgment, it is defendant's burden to establish prima facie that plaintiff does not have a reasonable excuse for failing to give notice at an earlier time.

Defendant asserts that when plaintiff signed his federal court affidavit in November 2002, he was aware of the "specific, detailed allegations" concerning the deficiencies in his representation. Thus, defendant argues that plaintiff reasonably should have given notice of a potential claim at that time. However, an incarcerated defendant may be expected to pursue any avenue of relief and may even make reckless claims against his attorney. When plaintiff prepared his affidavit, Judge Belfi had already ruled that plaintiff had provided meaningful representation. Judge Weinstein subsequently held that Judge Belfi's ruling was an unreasonable application of *Strickland*. Nonetheless, the issue for this court is not the reasonableness of the County Court decision, but rather the reasonableness of the notice by the defense attorney. In view of Judge Belfi's ruling, plaintiff's failure to give notice in November 2002 was reasonable, even though Gersten, in apparent desperation, was presenting his ineffective assistance claim to another forum.

However, 28 USC § 2254 (d) provides that state court factual determinations are presumed correct and the District Court may not hold an evidentiary hearing if petitioner failed to develop the factual basis of his claim in state court. Thus, when Judge Weinstein ordered an evidentiary hearing on Gersten's habeas corpus petition, he must have viewed the factual basis of the ineffective assistance claim to have been adequately developed. When plaintiff was called to testify, it should have been clear to him that, despite the presumption that Judge Belfi's ruling was correct, Judge Weinstein saw potential merit to the ineffective assistance claim. Defendant has established that it was prima facie unreasonable for plaintiff not to give notice of a potential claim after his testimony on January 12, 2004. The burden shifts to plaintiff to show a triable issue as to whether he had a reasonable excuse for not giving notice at that time.

Plaintiff asserts that he was never served with a copy of Judge Weinstein's order and, although he learned informally that the

federal habeas petition had been granted, he was not aware of the court's "specific findings." Plaintiff further asserts that he was informed by an Assistant District Attorney that the People intended to retry Gersten, if their appeal to the Second Circuit was not successful. In January 2004, plaintiff may not have known the details of Judge Weinstein's ruling, or its likelihood of being affirmed by the U.S. Court of Appeals. However, he was clearly on notice that his representation had been held inadequate according to the federal constitutional standard. Nevertheless, plaintiff argues his failure to give notice to the insurer was reasonable because a federal determination of ineffective assistance is not tantamount to a potential malpractice claim.

"Under the state and federal constitutions, a criminal defendant is entitled to the effective assistance of counsel, defined as representation that is reasonably competent, conflict-free and singlemindedly devoted to the client's best interests" (*People v Ennis*, 11 NY3d 403, 409-410 [2008]). Where no conflict of interest is involved, the New York standard for assessing the effectiveness of trial counsel is whether the attorney provided "meaningful representation" (*id.* at 411). Thus, New York adopts a "flexible approach that takes into account the fairness of the trial process as a whole and the totality of the representation" (*id.* at 412). While a showing of prejudice is "significant," it is not an "indispensable element" of a state ineffective assistance claim (*id.*). Since New York does not require but for causality for ineffective assistance, an attorney whose assistance has been found ineffective by the state standard has not necessarily committed malpractice.

However, under the federal ineffective assistance standard, the defendant must show that "but for" counsel's inadequacy, the outcome of the trial would have been different (*id.* at 412). Thus, an attorney whose assistance has been found ineffective by the federal standard is on notice that the attorney may be subject to a potential malpractice claim.

Since plaintiff was aware in January 2004 that his representation was found to have fallen short of the federal standard, he does not have a reasonable excuse for failing to give notice of a potential malpractice claim at that time. Defendant American Guarantee's motion for summary judgment is granted to the extent of declaring that it has no obligation to defend or indemnify plaintiff with respect to the underlying malpractice action. Plaintiff's cross motion for summary judgment requesting a declaration that the insurer is obligated to defend and indemnify him is denied.

■ Insurance Law § 3420 (a) (2) provides that the policy must contain a provision that in case judgment against the insured shall remain unsatisfied for 30 days from the serving of notice of entry of judgment, an action may be maintained against the insurer. The policy must also contain a provision "that notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer" (Insurance Law § 3420 [a] [3]).

Because the statute grants the injured person an independent right to give notice and to recover against the insurer, the injured party is not to be "charged vicariously with the insured's delay" (*Becker v Colonial Coop. Ins. Co.*, 24 AD3d 702, 704 [2d Dept 2005]).

> "The injured person's rights must be judged by the prospects for giving notice that were afforded him, not by those available to the insured. What is reasonably possible for the insured may not be reasonably possible for the person he has injured. The passage of time does not of itself make delay unreasonable . . . . Thus, the pertinent inquiry is whether the [injured party] pursued his rights with as much diligence as was reasonably possible" (*id.* [internal quotation marks omitted]).

The injured person must be reasonably diligent in ascertaining coverage and in giving notice to the insurer that he is asserting a claim (*Tower Ins. Co. of N.Y. v Lin Hsin Long Co.*, 50 AD3d 305, 309 [1st Dept 2008]).

On defendant American Guarantee's motion for summary judgment, it is its burden to establish prima facie that Gersten was not diligent in ascertaining coverage and giving notice. American Guarantee asserts that it did not receive notice that Gersten was asserting a claim until May 30, 2008, when it received his answer, asserting a cross claim against American Guarantee. Gersten asserts that plaintiff's notice to his liability carrier in August 2007 constitutes notice on behalf of Gersten. Where an injured party does not provide his own notice to the insurer, but instead relies on the insured's notice, the injured party's rights are "derivative of the insured's" (*Tower Ins. Co. v Lin Hsin Long Co.* at 309). Nevertheless, the dissent in *Tower Ins.* was of the view that the injured party may rely upon notice by the insured (*see id.* at 311). Thus, for the purpose of the

summary judgment motion, the court will assume, without deciding, that Lemke's notice was effective on behalf of Gersten and consider whether, from Gersten's perspective, the notice was reasonable.

"[A] criminal legal malpractice plaintiff cannot assert innocence while the criminal charges remain pending" (*Britt v Legal Aid Socy.*, 95 NY2d at 448). Thus, until the charges were dismissed on September 12, 2006, Gersten was prevented from commencing a legal malpractice action. Nevertheless, Gersten might have inquired as to the identity of Lemke's malpractice insurer prior to that date. Moreover, rather than proceeding against Lemke shortly after September 12, Gersten waited almost a year to commence a malpractice action. The court concludes that American Guarantee has carried its burden of establishing prima facie that Gersten did not act with reasonable diligence. The burden shifts to Gersten to show a triable issue as to whether he acted with reasonable diligence to ascertain coverage and notify the insurer.

Since Gersten offers no excuse for his failure to ascertain the identity of Lemke's insurer, defendant American Guarantee's motion for summary judgment declaring that it has no obligation to indemnify Lemke or pay any benefits of the policy to Gersten is granted. Defendant Gersten's motion for summary judgment declaring that he acted reasonably diligently with respect to the American Guarantee policy is denied.